## UNITED STATES ex rel. CIARELLO v. REIMER et al.

District Court, S. D. New York.

March 26, 1940.

Jacob W. Rozinsky, of New York City, for relator.

John T. Cahill, U. S. Atty. for Southern District of New York, of New York City (R. Lewis Townsend, Asst. U. S. Atty., of New York City, of counsel), for respondent.

HULBERT, District Judge.

The relator, Domenico Ciarello, was born at Marina, Province of Catanzaro, Italy, March 25, 1875 and came to the United States June 10, 1901, which was his first and last entry into this country.

He was arrested at Patterson, New Jersey, in 1906 on a murder charge and sentenced and served four years in the New Jersey State Prison. He was arrested in Harrison, New Jersey, in May 1928 on a charge of carnal abuse and sentenced to 15 years in the New Jersey State Prison.

These convictions are not made the ground for his deportation. The order for his deportation is based upon an earlier conviction disclosed during an examination of the relator by an inspector of the United States Immigration Service on April 20, 1939. Such examination was conducted at the New Jersey State Prison in the Italian language through another inmate, as interpreter. According to the record, the relator said: "I was first arrested in Catanzaro, Italy, about five or six years before I came to the United States on a charge of atrocious assault and battery; I stood trial

and was sentenced to nine months in the prison at Catanzaro."

At a continuance of said examination, the relator testified, with respect to such assault:

"I was arrested in Catanzaro, Italy, about ten years before I came to the United States, for assault and battery and I stood trial and was imprisoned at Catanzaro for about eight or nine months.

\* \* \* \* \* \*

"I was a young man and we had been drinking with some other young men and I had an argument with one of the young men who was in the party. He threw a brick at me and I threw a stone at him and split his head open."

█ It is the contention of the Government that the conviction above referred to was one involving moral turpitude. That term is vague and indefinite, but imports an "act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen or to society in general contrary to the accepted and customary rule of right and duty between man and man."

It is conceded by counsel for the Government that such an assault would not ordinarily amount to a crime involving moral turpitude but that in view of the relator's subsequent convictions the Court may, and should, indulge in the presumption that the relator was mentally so criminally inclined that moral turpitude must be inferred.

There is nothing in the record to show that the relator ever was convicted, except his own admission, and nothing else from which I can determine the nature of the charge, the law under which prosecution was had and penalty imposed, but, counsel for the Government stated on the argument, and urges in his brief, that the facts disclosed by the record are analogous to Section 242 of the New York Penal Law, Consol.Laws, c. 40, which defines assault in the second degree, and, so far as pertinent, reads:

"A person who, under circumstances not amounting to the crime specified in section two hundred and forty [assault in the first degree] \* \* \*

"3. Wilfully and wrongfully wounds or inflicts grievous bodily harm upon another, either with or without a weapon; or,

"4. Wilfully and wrongfully assaults another by the use of a weapon, or other instrument or thing likely to produce grievous bodily harm; or \* \* \*."

█ It has been held that assault in the second degree is not a crime involving moral turpitude. United States ex rel. Zaffarano v. Corsi, 2 Cir., 63 F.2d 757; United States ex rel. Griffo v. McCandless, D.C., 28 F.2d 287.

The Government cites and relies upon Weedin, Commissioner v. Yamada, 9 Cir., 4 F.2d 455, 457, in which case the alien sought to be deported was charged with the crime of assault with a deadly weapon (the character of which was not mentioned) and the Court said: "It will thus be seen that the crime involves an assault with a deadly weapon, with an intent to inflict upon the person of another a bodily injury, where *no considerable provocation appears,* or where the circumstances of the assault show a willful, malignant, and abandoned heart, and is punishable as a felony. Such a crime, in our opinion, involves moral turpitude beyond any question."

The italicizing is mine to emphasize the considered importance of the element of provocation.

█ In the case at bar the undisputed fact is that the relator, who was then 16 years of age, threw a stone and hit a man who had previously thrown a brick at him.

Assuming, but not deciding, that in the absence of the record of conviction the relator's admission is sufficient proof of his offense and conviction, the statement made to the inspector by him was not signed by him, the capability of the interpreter does not appear from the record, and the Court cannot justifiably assume that the relator used any word in the Italian language, reasonably susceptible to the translation as "atrocious".

Moreover, the crime in question occurred 49 years ago, 10 years before the entry of the relator into the United States. His conviction and sentence on the murder charge occurred more than 5 years after he entered the United States and his conviction on the carnal abuse charge 22 years later.

█ That the deportation of this relator is desirable is hardly open to question but it cannot be effected solely upon the theory that the end justifies the means. Certainly the two convictions subsequent to the relator's entry into the United States

do not justify the assumption, as the Government contends, that he was such a hardened criminal at the age of 16 years that the assault then perpetrated by him involved moral turpitude. I have had occasion to pass upon a somewhat analogous situation in a Naturalization proceeding, United States v. Joseph Tedesco, D.C., 31 F.Supp. 322.

The writ must be sustained.