TRIBUNAL EXAMINADOR DE MÉDICOS DE PUERTO RICO, recurrente, *v.* DR. LUIS J. FLORES VILAR, recurrido.

*Número:* CE-91-606          *Resuelto:* 24 de diciembre de 1991

*Abraham Díaz González*, abogado del recurrente.

## RESOLUCIÓN

Por vía de reconsideración, se concede al recurrido Dr. Luis J. Flores Vilar un término de veinte (20) días para que comparezca por escrito a mostrar causa, si la hubiere, por la cual no debamos expedir el auto solicitado y dejar sin efecto la sentencia del Tribunal Superior, Sala de San Juan (Hon. Sonia Ivette Vélez Colón, Juez designada) y restaurar el dictamen del Tribunal Examinador de Médicos que le canceló su licencia como médico.

Lo acordó el Tribunal y certifica la señora Subsecretaria General Interina. El Juez Asociado Señor Negrón García emitió un voto concurrente y explicativo. La Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Alonso Alonso disintieron sin opinión escrita. El Juez Presidente

Señor Pons Núñez no intervino. El Juez Asociado Señor Andréu García se inhibió.

(*Fdo.*) Carmen E. Cruz Rivera
*Subsecretaria General Interina*

**– O –**

Voto concurrente y explicativo del Juez Asociado Señor Negrón García.

*Como todo reglamento, el nuestro es instrumental; nunca debe sofocar la JUSTICIA.* Así entendido, la cuestión ante nos es una pura de derecho. Estamos conformes con la resolución de hoy que concede un término al recurrido Dr. Luis J. Flores Vilar para que muestre causa por la cual no debe el Tribunal expedir y dejar sin efecto la sentencia del Tribunal Superior, Sala de San Juan (Hon. Sonia I. Vélez Colón, Juez designada). Como cuestión de realidad, el estudio definitivo del recurso nos permite concluir que dicho foro *erróneamente* revocó el dictamen del Tribunal Examinador de Médicos de Puerto Rico (T.E.M.) que canceló su licencia de médico. Nos explicamos.

I

La resolución original de 1ro de noviembre de 1991, que declaró no ha lugar el *certiorari*, estuvo predicada en un supuesto incumplimiento con nuestro Reglamento. La postura mayoritaria inicial se fundamentó en que el peticionario (T.E.M.) no nos incluyó una copia de los documentos que formaban parte del récord en el Tribunal Superior relativos a la solicitud de revisión, necesarios para ponernos en condiciones de decidir sobre la expedición del auto. En aquel momento se invocó la Regla 21(g)(4) de nuestro Reglamento, 4 L.P.R.A. Ap. I-A.

*Desde el primer momento disentimos.* Valga aclarar que en dicha resolución la Juez Asociada Señora Naveira de Rodón, al expresar su conformidad, hizo constar "su preocupación, con el hecho de que en un número de casos cada vez mayor, este Tribunal se ve impedido de *entrar en los méritos de casos que plantean importantes controversias*, debido a que los representantes legales de las partes incumplen con el Reglamento de este Foro, no incluyendo en el apéndice de los recursos presentados los documentos necesarios para poder evaluar los méritos de lo solicitado". (Énfasis suplido.) Resolución de 1ro de noviembre de 1991. El Juez Asociado Señor Andréu García consignó su inhibición.

La Regla 21(g)(4) del Reglamento del Tribunal Supremo de Puerto Rico, *supra*, en lo pertinente, se refiere a "cualquier *otro* documento que forme parte del récord en el Tribunal Superior, y que *pueda ser útil* a este Tribunal a tomar su decisión sobre la expedición del auto". (Énfasis suplido.)

El peticionario T.E.M. cumplió sustancialmente con el Reglamento del Tribunal Supremo de Puerto Rico. A su amparo nos presentó suficientes documentos para adoptar *en sus méritos una decisión inteligente* y, sobre todo, *JUSTA*. Su "Relación de hechos" quedó avalada por los documentos del apéndice al "Recurso de revisión". Describió con minuciosidad la naturaleza de la controversia a la luz de las alegaciones y los planteamientos de las partes. Como parte de ese apéndice al recurso de revisión, incluyó *todos* los documentos necesarios y útiles para la comprensión de la controversia y su expedición. Anejó la voluminosa transcripción de la prueba oral de la vista administrativa celebrada el 3 de mayo de 1988. Recurso de revisión, págs. 79–233.

Para demostrar el cumplimiento sustancial del Reglamento del Tribunal Supremo de Puerto Rico, y para hacer *justicia*, circunscribimos nuestro análisis a los hechos, trá-

mites y demás constancias que surgen de la petición de *certiorari* y de su apéndice *en su estado original.* Veamos.

## II

Como expusiéramos, el presente caso gira en torno a la validez de la revocación de la licencia del doctor Flores Vilar, especialista en fisiatría, decretada por el T.E.M. por haber cometido un delito que implica depravación moral.

La prueba *no contradicha* revela que el 30 de octubre de 1981, mientras examinaba a una paciente[1] en su consultorio, el doctor Flores Vilar incurrió en la conducta siguiente:

El Doctor puso a la suegra frente a la máquina y; a la testigo detrás de la suegra, colocándose el Doctor detrás de la testigo y le dijo "lo que yo te haga a tí, tú se lo haces a tu suegra". El Doctor le pone las manos en los hombros de la testigo y le dá masajes a éstos, y la testigo le puso las manos en los hombros a la suegra y le dió masajes a éstos. Luego el Doctor le puso su mano derecha en la cintura de la testigo y la mano izquierda debajo de la axila izquierda de la testigo. Luego el doctor, empujó a la testigo hacia el lado con la mano que tenía en la cintura, a la vez que con la izquierda la empujaba hacia el lado derecho y la testigo se lo hizo a su suegra. Luego le tocó el seno derecho. Cuando la testigo se enderezó el doctor le apretó el seno y le puso su mano izquierda en su espalda y ella se lo hizo a su suegra, pero no le agarró el seno de la suegra. El Doctor con su mano derecha le agarró la vagina por encima de la falda que tenía puesta. Luego la empujó hacia él y la testigo sintió que el Doctor tenía su miembro completamente erecto. Al Doctor empujarla hacia atrás, la testigo le dio al Doctor con el codo izquierdo. Ella haló a su suegra también [é]sta dijo [¿]'qué pasa'? La testigo se soltó y se dirigió a la puerta (T. 2). Recurso de revisión, pág. 69.

La paciente lo denunció. Previo ciertos trámites, fue hallado culpable de agresión agravada en el Tribunal de Dis-

---

[1] Por razones obvias y por no ser imprecindible para la adjudicación, omitimos su nombre.

trito, Sala de San Juan. El 19 de agosto de 1982 fue sentenciado a pagar una multa de $500. Apeló. El 15 de agosto de 1983, el Tribunal Superior (Hon. René Arrillaga Beléndez, Juez) confirmó. Criminal Núm. M–82–1608.

Recaída esa convicción, se inició el procedimiento administrativo ante el T.E.M. con el propósito de revocarle la licencia en virtud del Art. 17 de la Ley Núm. 22 de 22 de abril de 1931, según enmendada, 20 L.P.R.A. sec. 52. Así se hizo después de múltiples trámites.

En revisión, el Tribunal Superior (Hon. Vélez Colón, Juez) revocó. Resolvió que no se habían observado las garantías mínimas del debido proceso de ley. Concluyó, además, que no se había desfilado el testimonio de la perjudicada y que el T.E.M. sólo basó su dictamen en la sentencia de convicción emitida en apelación por el Tribunal Superior. Según su ilustrado juicio, ello no constituyó prueba suficiente.

El T.E.M. acudió ante nos.

### III

El T.E.M. actuó en virtud de lo dispuesto en el Art. 17 antes citado. Dispone:

> El Tribunal podrá suspender, cancelar o revocar una licencia, o imponer a un médico u osteólogo un período de prueba para el ejercicio de la profesión por un tiempo determinado, previa notificación de los cargos y la celebración de vista administrativa donde se garantice al médico u osteólogo afectado el debido procedimiento de ley, por las siguientes razones:
> (a) Haber sido convicto de practicar ilegalmente cualquier profesión reglamentada por ley en Puerto Rico.
> (b) Haber sido convicto de delito grave o menos grave que implique depravación moral. 20 L.P.R.A. sec. 52.

Surge del apéndice al recurso de revisión y de la sentencia del tribunal de instancia que el doctor Flores Vilar fue debidamente notificado de los cargos y asistió a una vista

administrativa. Durante todo el proceso estuvo representado por tres (3) experimentados abogados.

*No hubo, pues, violación alguna al debido proceso de ley.* El problema planteado se reduce a examinar si la sentencia de convicción por agresión agravada constituyó evidencia suficiente para la revocación.

No hay duda de que el delito cometido por el doctor Flores Vilar, *por la naturaleza de los hechos, implica depravación moral.* Quedó diáfanamente establecido que aprovechó su consultorio y la confianza que inspira su profesión para atentar contra la integridad física y moral de una paciente. Sin que fuera necesario para el tratamiento médico, le tocó sus áreas genitales. La sentencia final penal emitida por el Honorable Juez Arrillaga Beléndez —presentada en evidencia en la vista administrativa ante el T.E.M.— probó los elementos necesarios para que procediera la revocación. *Román v. Trib. Exam. de Médicos,* 116 D.P.R. 71 (1985). Aunque se le encontró convicto por agresión agravada, reiteradamente hemos resuelto que se entiende por depravación moral un "estado o condición del individuo, compuesto por una deficiencia inherente de su sentido de la moral y la rectitud; en que la persona ha dejado de preocuparse por el respeto y la seguridad de la vida humana y todo lo que hace es esencialmente malo, doloso, fraudulento, inmoral, vil en su naturaleza y dañino en sus consecuencias". *Morales Merced v. Tribunal Superior,* 93 D.P.R. 423, 430 (1966).

## IV

El razonamiento de la ilustrada sala sentenciadora (Honorable Vélez Colón, Juez) es claramente errónea. Sostiene que el propósito que tuvo el Juez Superior Arrillaga Beléndez al citar de la *Exposición Narrativa* el testimonio de la paciente —transcrito al inicio de esta ponencia— fue "dentro del contexto de la sentencia en apelación, *no fue dar por*

*probados los hechos* del relato de la testigo sino con el fin de sostener que de éste no se desprendía el consentimiento exculpatorio y que de *ser creída* era suficiente para establecer infracción al Art. 95". (Énfasis suplido.) Recurso de revisión, pág. 41. Y continúa: "La cita anterior *no es una transcripción de la declaración de la testigo. Es parte de la Exposición Narrativa, por lo que en* el récord *no existe* testimonio o *transcripción de la perjudicada, no existe declaración de la perjudicada sobre las circunstancias en que se cometió el delito, excepto la exposición narrativa preparada a base de dicho testimonio*.... El recurrente [doctor Flores Vilar] en la vista [administrativa] no oyó declarar a las promoventes de la querella, que eran los testigos adversos anunciados, por lo que nunca hubo careo ni oportunidad de contrainterrogar." (Énfasis suplido.) Íd., págs. 41–42.

Más adelante expone que "[e]l oficial examinador nunca oyó declarar a las perjudicadas, no observó su 'demeanor', sus gestos y expresiones, sus contestaciones bajo un interrogatorio directo y un contrainterrogatorio. *Tampoco contó con el beneficio de un examen de la declaración anterior de la testigo.* Hace conclusiones sobre la forma en que ocurrieron los hechos, pero sin prueba que le permita resolver sobre la comisión de los mismos y las implicaciones morales, determinación esencial de esa acción. En todo caso era necesario para esta conclusión que escuchara a las perjudicadas para que utilizando su propio criterio, a la luz de la apreciación de la prueba que se le presentara, llegara a un resultado con plena convicción y fundamento del mismo sobre la forma en que ocurrieron los hechos y sus implicaciones". (Énfasis suplido.) Recurso de revisión, pág. 43.

La lectura de estos argumentos revela, en primer lugar, cómo el tribunal a quo, de manera especulativa, penetró la conciencia del Juez Arrillaga Beléndez para entonces erróneamente concluir que la prueba analizada y creída por él no era "sobre las circunstancias en que se cometió el delito

...". Recurso de revisión, pág. 241. Al así hacerlo el tribunal a quo pasó por alto que la forma y manera que el doctor Flores Vilar agredió a su paciente surgió de la Exposición Narrativa *debidamente certificada*, esto es, de la prueba desfilada en el proceso criminal ante el Tribunal de Distrito. *Esa exposición narrativa sustituyó la transcripción de evidencia.* De prevalecer el criterio del tribunal a quo, tendríamos de inmediato que anular todas las sentencias penales dictadas en apelación que han sido confirmadas, precisamente mediante el mecanismo de la exposición narrativa.

El argumento tampoco toma en cuenta que el propio querellado doctor Flores Vilar *admitió* al Examinador que la "información que se recog[ía]" en la sentencia del Juez Arrillaga Beléndez era "la *versión* de [la paciente]" (Recurso de revisión, pág. 226), *a quien oyó declarar* en tres (3) ocasiones. Íd., pág. 207.

La postura procesal del querellado Flores Vilar que encontró eco en el tribunal a quo es insostenible. *Primero, sin que fuera objetado*, se desfiló prueba en la vista administrativa de la demanda radicada en su contra por la paciente y que fue transigida. Recurso de revisión, págs. 216 y 219–223; *Exhibit* 4, Anejo D. Ante esa situación, no vemos cómo la ilustrada sala sentenciadora concluyó que esa prueba era inadmisible. Repetimos, si no fue objetada no podía ser ignorada por el Examinador; tampoco por el Tribunal Superior; menos por nosotros. *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762 (1991); *Pueblo v. Millán Meléndez*, 110 D.P.R. 171, 180 (1980). *Segundo*, es peregrina su contención de que ante la indisponibilidad de la *paciente como testigo* no era admisible la sentencia del Juez Arrillaga Beléndez. Tal posición olvida que la ausencia de esa testigo fue así explicada: "No prestaron testimonio las querellantes porque, con antelación a la vista administrativa, el Querellado selló sus labios al pagarles en transacción la suma de $8,000.00 que pagó, no de su seguro médico, sino

de su propio peculio. El Querellado compró la oportunidad de no carearse con las querellantes. Ello se desprende del testimonio del propio Querellado, véase transcripción, vista de 3 de mayo de 1988, págs. 132 a 146 .... Resulta paradógico que el Hon. Tribunal invoque en su Sentencia la ausencia de testigos cuyos labios la prueba demuestra selló el Querellado. *La vista no fue más plena porque lo impidió el propio Querellado. Sabido es que la plenitud no siempre es objetivo de algunos·suplicantes de justicia."* (Énfasis suplido.) Íd., pág. 20.

Más allá de ese argumento, desde el prisma técnico evidenciario, la cuestión se rige por la Regla 64(B)(1) de Evidencia, 32 L.P.R.A. Ap. IV. Esta reconoce la admisibilidad de un testimonio dado en *otra vista* o una deposición conforme a derecho, siempre que se garantice el derecho a contrainterrogar. El propósito es ofrecer al tribunal suficientes garantías de confiabilidad de forma tal que, aún con la ausencia del declarante, no arroje dudas sobre su testimonio.

Junto al elemento de *confiabilidad* hemos dicho que el otro requisito para la admisión del testimonio ausente del declarante es su *indisponibilidad. Pueblo v. Ruiz Lebrón,* 111 D.P.R. 435, 446 (1981); *Pueblo v. Lebrón González,* 113 D.P.R. 81, 97 (1982).

Aquí, la paciente perjudicada por la acción delictiva del doctor Flores Vilar no compareció a la vista administrativa por la razón que hemos señalado anteriormente. El propio querellado doctor Flores Vilar transó su reclamación civil de forma tal que "compró [su] silencio". No puede ahora invocar como error la ausencia de ese testimonio para cuestionar el valor probatorio de la sentencia y desacreditar la totalidad del proceso seguido en su contra.

La evidencia presentada ante el T.E.M. para probar los cargos cumplió con los requisitos de la citada regla de Evidencia, a saber, a través de sentencia se presentó una narración equivalente a la transcripción del testimonio de la

perjudicada en un juicio penal donde el querellado tuvo la oportunidad de contrainterrogar, estuvo representado por un abogado y pudo carearse con dicho testigo.

En resumen, el proceso y la revocación de la licencia del doctor Flores Vilar están avalados por una sentencia emitida por el Tribunal de Distrito, confirmada por el Tribunal Superior y por un procedimiento administrativo rodeado de todas las garantías de la ley. Aceptar la premisa de que la sentencia del Honorable Juez Arrillaga Beléndez —según *todos* sus términos— sólo es prueba de una convicción de un delito menos grave (agresión agravada) *ajena* a unos hechos probados que implican depravación moral, *es una ficción absurda que atenta contra la VERDAD*. Conlleva relitigar —de espaldas a sentencias finales y firmes de los tribunales— hechos que realmente ocurrieron y quedaron depurados por el rigor de un proceso criminal que entraña el *quantum* de prueba *mayor* que existe en nuestro ordenamiento jurídico ("más allá de duda razonable"); ciertamente más riguroso que el seguido en el proceso administrativo.