Luis Rivera Pagán, demandante y recurrido, *v.* Superintendente de la Policía de Puerto Rico, demandado y peticionario.

*Número:* CE-89-332 *Resuelto:* 29 de abril de 1994

*Rafael Ortiz Carrión, Jorge E. Pérez Díaz, Procuradores Generales,* y *Eunice Amaro Garay, Procuradora General Auxiliar,* abogados del peticionario.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

Nos toca decidir si, a la luz de los hechos del presente caso, actuó correctamente el Superintendente de la Policía de Puerto Rico al denegar a un ciudadano, que fue convicto por dos (2) delitos de tentativa de asesinato, una licencia para tener y poseer un arma de fuego,[1] a pesar de éste haber obtenido judicialmente la eliminación de dichas convicciones de su historial penal al amparo del procedimiento provisto por la Ley Núm. 108 de 21 de junio de 1968, según enmendada, 34 L.P.R.A. sec. 1731 *et seq.*

---

[1] Véase *Pueblo v. Del Río,* 113 D.P.R. 684, 689 (1982), donde dijimos:

"Es sumamente importante que mantengamos presente el hecho de que en nuestra jurisdicción la posesión y/o portación de un arma de fuego no es un derecho y sí un privilegio; en otras palabras, es una 'actividad' controlada o restringida por el Estado. Sobre este punto no hay que abundar mucho; ello surge con meridiana claridad de una simple lectura de las disposiciones de la Ley de Armas de Puerto Rico, Ley Núm. 17 de 19 de junio de 1951, según enmendada." (Énfasis suprimido.)

# I

Los hechos que motivan el presente análisis son los siguientes:

El demandante recurrido presentó al Superintendente de la Policía una solicitud de licencia para tener y poseer un arma de fuego por su condición de jefe de familia.([2])

A pesar de que los vecinos del señor Rivera Pagán lo recomendaron favorablemente durante el proceso de investigación al que fuera sometida su solicitud, ésta fue denegada por el Superintendente. La denegación se fundamentó en el examen de los antecedentes penales del señor Rivera Pagán. Dicho examen reflejó que el señor Rivera Pagán había sido convicto veinticinco (25) años antes por dos (2) delitos de "ataque para cometer asesinato"([3]) y violación a los Arts. 4, 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 414, 416 y 418. Con anterioridad a la fecha de presentación de la mencionada solicitud, el recurrido obtuvo de la Sala de Manatí del Tribunal de Distrito la eliminación de tales convicciones de su historial de antecedentes penales mediante el procedimiento instado conforme a la Ley Núm. 108 antes citada.

Al ser denegada por el Superintendente la licencia solicitada, el recurrido presentó una demanda en contra de aquél a tenor con lo provisto por el Art. 19(d) de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 429(d). Aplicando el razonamiento de que la eliminación de las convicciones antes mencionadas del expediente del recurrido "lo habilitan y cualifican para ser acreedor a una licencia de tener y

---

([2]) En esta solicitud hizo constar bajo juramento que nunca había sido convicto por ninguno de los delitos mencionados en el Art. 17 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 427. Anteriormente había suministrado otra declaración jurada ante notario público en la que hizo constar que nunca había sido convicto por delito alguno ni que hubiese tenido problema alguno con la ley.

([3]) El Art. 26 del vigente Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3121, reunió en el término "tentativa" las disposiciones del código anterior referentes al "ataque para", "delito frustrado" y "tentativa". Por ello, en esta opinión nos referimos a "tentativa de asesinato" en lugar de "ataque para cometer asesinato".

poseer un arma de fuego siempre que cumpla con los otros requisitos exigidos por la ley y el reglamento aplicable" (*Exhibit* I, pág. 3), el tribunal de instancia declaró con lugar dicha demanda y ordenó al Superintendente otorgar al recurrido la licencia solicitada por éste. No conforme con la resolución del tribunal de instancia, el Superintendente, a través del Procurador General, recurre mediante la petición de *certiorari* que decidimos expedir y ahora resolvemos.

## II

La Ley de Armas de Puerto Rico faculta al Superintendente de la Policía de Puerto Rico a expedir una licencia para tener y poseer armas de fuego a aquellos que la soliciten y que cumplan con los requisitos que la ley dispone. El Art. 15 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 425, dispone en su parte pertinente lo siguiente:

> El Superintendente de la Policía de Puerto Rico, al presentársele solicitud para ello por cualquier jefe de familia, comerciante o agricultor, y *siempre que se cumplan los requisitos que más adelante se disponen, podrá expedir* a tal solicitante una licencia para tener y poseer una pistola o revólver y autorizándole, si jefe de familia, a tener y poseer tal arma en su residencia o, si comerciante, a tener y poseer un arma en su sitio de negocios o, si agricultor, un arma en su finca rústica. (Énfasis suplido.)

De ahí que para que una persona pueda tener y poseer legalmente un arma de fuego, debe cumplir con todos los requisitos dispuestos por la Ley de Armas de Puerto Rico y someterse a una evaluación por el Superintendente de la Policía. El Superintendente *podrá* expedir dicha licencia en el uso de su sana discreción *siempre y cuando el solicitante reúna los requisitos mencionados en la ley.*

La Ley de Armas de Puerto Rico, en su Art. 17 (25 L.P.R.A. sec. 427), dispone la limitación siguiente:

El Superintendente de la Policía de Puerto Rico *no expedirá* licencia para tener y poseer un arma de fuego a persona alguna que haya sido convicta, en o fuera de Puerto Rico, de cualquiera de los siguientes delitos *o de tentativa*([4]) *para cometer los mismos: asesinato en cualquier grado*, homicidio, secuestro, violación, mutilación, *tentativa de cualquier delito grave*, agresión agravada, cuando este delito se haya realizado con un arma cortante, punzante o de fuego, robo, escalamiento, apropiación ilegal, apropiación ilegal agravada, incendio, incendio agravado, incesto, o infracción a la Ley Núm. 53 de 10 de junio de 1948, según ha sido enmendada o infracción a las secs. 1247 a 1257 del Título 33, o infracción a la sec. 4521 del Título 33, ni a ninguna persona que sea un desequilibrado mental, un ebrio habitual o que sea adicto al uso de narcóticos o drogas, *ni a ninguna persona que haya sido convicta por violación a las disposiciones de este Capítulo.* (Énfasis suplido.)

■ De la lectura de dicha disposición de ley se desprende con claridad que una persona convicta de tentativa de asesinato o de infringir la propia Ley de Armas de Puerto Rico no podrá gozar del privilegio de obtener una licencia para tener y poseer un arma de fuego.

Por otro lado, la Ley sobre Eliminación de Convicciones de Delitos Menos Graves del Récord Penal, Ley Núm. 108, *supra*, dispone, en lo pertinente:

Toda persona que haya sido convicta de delito menos grave o delito grave *que no fuere asesinato*, homicidio voluntario, robo, incesto, extorsión, violación, sodomía, actos lascivos o impúdicos, secuestro, robo de menores, escalamiento agravado, incendio agravado, venta y/o distribución de sustancias controladas, sabotaje de servicios públicos esenciales, la posesión, uso o venta de armas automáticas, cualquier violación a las secs. 561 et seq. del Título 25 que constituya delito grave y cualquier delito grave que surja como consecuencia de la posesión o uso ilegal de explosivos o detonadores, artefactos o mecanismos

---

([4]) El Art. 17 de la Ley Núm. 17 de 19 de enero de 1951, *supra*, fue enmendado por la Ley Núm. 69 de 27 de mayo de 1980. El proyecto del Senado que originó esta enmienda, P. del S. 1383 de 27 de mayo de 1980, eliminó del citado artículo la frase "ataque con intención de cometer asesinato u homicidio, acometimiento y agresión grave". En su lugar la enmendó para que leyera "tentativa de cualquier delito grave, agresión agravada ...". Dicha enmienda va dirigida a armonizar la denominación de los delitos enumerados con la denominación y tipificación que tienen en el Código Penal de 1974.

prohibidos por dichas acciones, *podrá solicitar y obtener del Tribunal de Distrito de Puerto Rico una orden para que dichas convicciones sean eliminadas de su récord penal, siempre que en el caso concurran las siguientes circunstancias*:

(a) *Que los delitos por los cuales fue convicto no impliquen depravación moral.*

(b) Que hayan transcurrido cinco (5) años desde la última convicción, en los casos de delitos menos graves, y quince (15) años desde la última convicción en los casos de delitos graves, y durante ese tiempo no haya cometido delito alguno. (Énfasis suplido.) 34 L.P.R.A. sec. 1731.

Vemos, pues, que por un lado, el Art. 17 de la Ley de Armas de Puerto Rico, *supra*, prohíbe la concesión de una licencia para tener y poseer un arma de fuego si el solicitante ha sido convicto de tentativa de cualquiera de los delitos que la ley enumera, entre ellos el asesinato. Por otro lado, la Ley Núm. 108, *supra*, permite la eliminación de *cualquier* convicción *que no haya sido por los delitos enumerados en ella.* Como puede verse, no aparece incluida en dicha enumeración la tentativa de cometer tales delitos. No obstante, desde la adopción del estatuto original de 1968, éste ha excluido de su ámbito reparador aquellos delitos que implican depravación moral. Así, el mencionado estatuto se limitaba únicamente a la eliminación de las convicciones por delitos *menos grave que "no impliquen depravación moral".*[5]

Posteriormente, mediante la Ley Núm. 44 de 1ro de junio de 1983 (34 L.P.R.A. secs. 1731(b), 1732 y 1733) se enmendó el referido estatuto para hacerlo extensivo a aque-

---

[5] El Art. 1 de dicho estatuto —Ley Núm. 108 de 21 de junio de 1968— disponía del modo siguiente:

"Toda persona que haya sido convicta de delito menos grave podrá solicitar y obtener del Tribunal de Distrito de Puerto Rico una orden para que dichas convicciones sean eliminadas de su récord penal siempre que en el caso concurran las siguientes circunstancias:

"(a) *Que los delitos por los cuales fue convicto no impliquen depravación moral.*

"(b) Que hayan transcurrido diez (10) años desde la última convicción y durante ese tiempo no haya cometido delito alguno.

"(c) Que tenga buena reputación moral en la comunidad." (Énfasis suplido.) 34 L.P.R.A. sec. 1731 (ed. 1971).

llas convicciones por delitos graves que no fueran de los que se enumeran en la ley. Sin embargo, se mantuvo el requisito contenido en el inciso (a) de dicho estatuto al efecto de "[q]ue los delitos por los cuales fue convicto [el peticionario] no impliquen depravación moral". 34 L.P.R.A. sec. 1731(a). Por lo tanto, del texto de la ley surge claramente que no procede eliminar del historial penal de un ciudadano la convicción de éste por delitos que implican depravación moral. En *Pueblo v. Ortiz Martínez*, 123 D.P.R. 820, 830 (1989), establecimos claramente que, bajo la Ley Núm. 108, *supra*, "[a]parte del requisito del transcurso de tiempo y la demostración de buena reputación, las convicciones objeto de la solicitud no pueden haber implicado *depravación moral*". (Énfasis en el original.)

Ahora bien, ¿es la tentativa de asesinato un delito que implica depravación moral? Veamos.

## III

El término "depravación moral" es difícil de definir con precisión en sentido estrictamente jurídico. Ello se debe a que el término conlleva juicios morales o éticos. El término no está definido en las leyes que nos ocupan en el caso de autos ni en otras leyes en las que también se utiliza dicha expresión.[6] Ello no obstante, en *Morales Merced v. Tribunal Superior*, 93 D.P.R. 423, 430 (1966), dijimos lo siguiente en torno a la depravación moral:

En general la consideramos como un estado o condición del

---

[6] A modo de ejemplo, en *Pueblo v. Ortiz Martínez*, 123 D.P.R. 820, 830 esc. 3 (1989), señalamos que el término "depravación moral" se encuentra con ciertas variaciones "en la Constitución de Puerto Rico como causa de residencia, Art. III, Sec. 21, Const. E.L.A., L.P.R.A., Tomo 1; como conducta que crea vacante de un funcionario público, 3 L.P.R.A. sec. 556; como motivo de desaforo de un abogado, 4 L.P.R.A. sec. 735, y como razón de inhabilitar a un ciudadano para servir como jurado, Regla 96(d) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. El Art. 40 de la Ley Núm. 432 de 15 de mayo de 1950 —derogada por la vigente Ley de la Judicatura del Estado Libre Asociado de Puerto Rico— proveía como motivo de destitución de un juez el incurrir en 'cualquier delito que implique depravación moral ...'. 1950 Leyes de Puerto Rico 1147."

individuo, compuesto por una deficiencia inherente de su sentido de la moral y la rectitud; en que la persona ha dejado de preocuparse por *el respeto y la seguridad de la vida humana* y todo lo que hace es esencialmente malo, doloso, fraudulento, inmoral, vil en su naturaleza y dañino en sus consecuencias.

El Diccionario de la Lengua Española, en su decimaoctava edición, nos dice que la voz "Depravar", significa viciar, adulterar, corromper, y que "Depravadamente", significa malvadamente, *con malicia suma.*

El Diccionario Terminológico de Ciencias Médicas, 8va. ed. Salvat, Barcelona, define Depravación así: "(de depravarse, viciar). Deterioración, cambio en peor sentido, perversión, especialmente en las sensaciones." (Énfasis suplido.)[7]

Por su parte, los tribunales federales y estatales de Estados Unidos han definido la depravación o torpeza moral (*moral turpitude*) así:

"An act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *United States v. Cornett*, 484 F.2d 1365, 1368–1369 (6to Cir. 1973). Véanse: *United States v. Reimer*, 32 F. Supp. 797, 798 (S.D. N.Y. 1940); *In re Hatch*, 73 P.2d 885, 10 Cal.2d 147 (Cal. 1937).[8]

Al igual que en Puerto Rico, existen varios estatutos en Estados Unidos que utilizan el término "depravación" o "torpeza moral". Entre ellos, se encuentra legislación que reglamenta la exclusión o deportación de inmigrantes ilegales, el desaforo de abogados, la revocación de licencias de médicos y la impugnación de la credibilidad de testigos. 1

---

[7] Véanse, también: *In re Ríos Ruiz*, 129 D.P.R. 666 (1991); *In re Torres López*, 119 D.P.R. 55 (1987); *In re Ortiz Gilot*, 117 D.P.R. 167 (1986); *In re Boscio Monllor*, 116 D.P.R. 692 (1985); *In re Rivera Cintrón*, 114 D.P.R. 481 (1983), y el voto concurrente y explicativo del Juez Asociado Señor Negrón García en *Tribunal Examinador de Médicos v. Flores*, 129 D.P.R. 687 (1991). En ocasiones, en lugar del término "depravación moral", se usan los vocablos "torpeza moral" o "deformación moral".

[8] Dicha definición también aparece en H.C. Black, *Black's Law Dictionary*, 6ta ed., Minnesota, Ed. West Publishing Co., 1990. Se ha definido también la depravación o torpeza moral como "[a]ny conduct which is contrary to principles of honesty, justice, or good morals. The term is normally applied to a type of conduct which is due particular opprobium. Commission of a crime which involves moral turpitude is generally considered more serious than other crimes." K.R. Redden y E.L. Veron, *Modern Legal Glossary*, Virginia, The Michie Co., 1980, pág. 348.

*LaFave and Scott, Substantive Criminal Law* Sec. 1.6, págs. 48–50 (1986). Nota, *Crimes Involving Moral Turpitude*, 43 Harv. L. Rev. 117 (1929).

█ El enfoque tradicional utilizado en Estados Unidos para hacer la determinación en cuanto a si un delito implica depravación moral es el de la "naturaleza inherente" del delito en específico. Este enfoque acarrea la presunción implícita de que algunos delitos, como el asesinato, implican en su esencia depravación o torpeza moral. La presencia de la intención criminal como elemento esencial del delito es frecuentemente considerado como un factor indicativo de depravación moral.[9]

A modo de ejemplo, bajo la Ley Federal de Inmigración, *Immigration and Nationality Act* de 1952 (8 U.S.C. sec. 1251 *et seq.*), según enmendada, se ordena la deportación o exclusión de inmigrantes que hayan cometido algún delito que implique depravación o torpeza moral (*crime involving moral turpitude*). Al aprobar la ley, el Congreso de Estados Unidos " 'no entendió conveniente expresar qué significado le atribuía a la frase "crime involving moral turpitude' " .... El historial legislativo no deja dudas en cuanto a que el Congreso dejó el término 'crime involving moral turpitude'

---

[9] En ocasiones, los tribunales consideran también si el delito es de los llamados *malum in se* o *malum prohibitum*. Son *malum in se* las actuaciones consideradas como ilegales por su propia naturaleza. Atentan contra la moral por su esencia misma, irrespectivamente de que sean punibles bajo el derecho positivo. A su vez, son *malum prohibitum* aquellas actuaciones que se consideran ilegales por el hecho de que son prohibidas por el Estado y no porque sean inherentemente inmorales. La regla general es que los delitos que implican depravación moral pertenecen a la categoría de los delitos *malum in se*. Sobre el origen y desarrollo de los términos *malum in se* y *malum prohibitum*, véanse: R.M. Perkins y R.N. Boyce, *Criminal Law*, Nueva York, Ed. Foundation Press, 1982, págs. 880–896; R. Moreland, *The Law of Homicide, Ind.*, Ed. Bobbs-Merrill Company, 1952, pág. 187; W. Holdsworth, *A History of English Law*, London, Ed. Methuen & Co. Ltd. Sweet and Maxwell, 1937, Vol. VI, págs. 218–219; W. Blackstone, *Commentaries on the Laws of England*, Oxford, Clarendon Press, 1966, pág. 57. Se cree que la distinción tuvo su génesis en el antiguo derecho canónico bajo el cual un cura que cometiese un acto *malum in se* era expulsado de la orden religiosa, mas no así uno que incurriese en un acto *malum prohibitum*.

a futura interpretación administrativa y judicial".([10]) *Cabral v. I.N.S.*, 15 F.3d 193, 195 (1er Cir. 1994), resuelto el 31 de enero de 1994. En *Jordan v. De George*, 341 U.S. 223 (1951), el Tribunal Supremo de Estados Unidos sostuvo la constitucionalidad del uso de la frase *crime involving moral turpitude* en la Ley de Inmigración de 1917, legislación precursora de la vigente ley de inmigración federal. "The term 'moral turpitude' has deep roots in the law." *Jordan v. De George*, supra, pág. 227.

Los tribunales en Estados Unidos han resuelto que entre los delitos que implican depravación moral se encuentran tanto el asesinato como la tentativa de asesinato. "That an assault with intent to murder involves moral turpitude requires no comment." *Clark v. Orabona*, 59 F.2d 187, 188 (1er Cir. 1932).([11])

Asimismo, se ha sostenido que la tentativa de cometer un delito que implica depravación o torpeza moral también constituye un delito de depravación moral. "An attempt involves specific intent to do the substantive crime ... and, if doing the latter discloses moral turpitude, so also does the attempt, for it is in the intent that moral turpitude inheres." *United States v. Day*, 54 F.2d 336, 337 (2do Cir. 1931).

 En Puerto Rico, conforme a nuestro Código Penal, comete *el delito de asesinato* aquel que le da muerte a un ser humano con malicia premeditada. Art. 82 del Código Penal, 33 L.P.R.A. sec. 4001. *Pueblo v. Robles Gonzá-*

---

([10]) Ya desde el 1891 existía en Estados Unidos una legislación federal que ordenaba la exclusión de "persons who have been convicted of a felony or other infamous crime or misdemeanor involving moral turpitude ...". Ley de 3 de marzo de 1891, 26 Stat. 1084.

([11]) Véanse, además: *Cabral v. I.N.S.*, 15 F.3d 193 (1er Cir. 1994); *United States v. Cornett*, 484 F.2d 1365 (6to Cir. 1973); *United States v. Holton*, 227 F.2d 886 (7mo Cir. 1956); *United States v. Sahli*, 216 F.2d 33 (7mo Cir. 1954); *Del Guercio v. Gabot*, 161 F.2d 559 (9no Cir. 1947); *Nagle v. Lim Foon*, 48 F.2d 51 (9no Cir. 1931); *Pillisz v. Smith*, 46 F.2d 769 (7mo Cir. 1931); *Tillinghast v. Edmead*, 31 F.2d 81 (1er Cir. 1929); *United States v. Smith*, 17 F.2d 534 (2do Cir. 1927); *Howes v. Tozer*, 3 F.2d 849 (1er Cir. 1925).

*lez*, 132 D.P.R. 554 (1993); *Pueblo v. Colón Soto*, 109 D.P.R. 545 (1980).([12]) El asesinato es un delito que, por su definición y naturaleza, conlleva un acto perverso, malintencionado y contrario a los valores éticos y morales de nuestra sociedad. Denota un estado o condición en el actor, compuesto por una deficiencia inherente de su sentido ·de la moral y la rectitud, como resultado de lo cual éste ha dejado de preocuparse por el respeto y la seguridad de la vida humana.

■ A su vez, conforme al Art. 26 de nuestro Código Penal, 33 L.P.R.A. sec. 3121, y al Art. 82 del Código Penal, *supra*, comete *el delito de tentativa de asesinato* aquel que " 'realiza acciones o incurre en omisiones inequívocamente dirigidas a' causar la muerte, con malicia premeditada, de un ser humano". *Pueblo v. Bonilla Ortiz*, 123 D.P.R. 434, 440 (1989). Véase *Pueblo v. Montoya Montoya*, 95 D.P.R. 703 (1968). En la tentativa de asesinato, la muerte no se consuma por circunstancias ajenas a la voluntad del actor.

■ En vista de que la intención y el objetivo del actor, así como la naturaleza o esencia de la acción u omisión son las mismas, tanto en el caso en que se intenta la comisión de un delito como en el caso en que se consuma totalmente

---

([12]) El Art. 7(19) de nuestro Código Penal define el vocablo "malicia" de la siguiente forma: "Malicia o maliciosamente.—Denotan la comisión de un acto dañoso, intencionalmente, sin justa causa o excusa y la consciente naturaleza del mismo." 33 L.P.R.A. sec. 3022(19). A su vez, el Art. 15 explica que: "El delito es intencional: (a) Cuando el resultado ha sido previsto y querido por la persona como consecuencia de su acción u omisión; o (b) Cuando el resultado sin ser querido ha sido previsto o pudo ser previsto por la persona como consecuencia natural o probable de su acción u omisión." 33 L.P.R.A. sec. 3062. En cuanto a la "malicia premeditada", hemos dicho que tal concepto "implica la ausencia de justa causa o excusa al ocasionar la muerte e implica además la existencia de la intención de ocasionar la muerte de un semejante. Esa intención se puede manifestar a través de uno de los siguientes elementos, cualquiera de los cuales es suficiente para determinar la existencia de malicia premeditada, a saber, (*a*) la intención específica de matar, considerada como equivalente al deseo y propósito directo, explícito y definido de matar, o sea, precisamente formulado con el objetivo directo de matar ... o, (*b*) la intención de realizar un acto o de producir un grave daño corporal cuya consecuencia probable sea la muerte de una persona. ... Este criterio se refiere a la peligrosidad envuelta en la actuación de un acusado, en el sentido de creación de un riesgo sustancial de muerte". (Citas y escolio omitidos.) *Pueblo v. Méndez*, 74 D.P.R. 913, 921–922 (1953).

ese delito —debiéndose la diferencia entre uno y otro caso a circunstancias *ajenas a la voluntad* del actor— es inescapable la conclusión de que *la tentativa* de cometer un delito que conlleva depravación moral constituye, a su vez, un delito que implica depravación moral.

Expuesto el trasfondo normativo aplicable, resolvemos que actuó acertadamente el Superintendente de la Policía de Puerto Rico al descartar la resolución dictada por la Sala de Manatí del Tribunal de Distrito de Puerto Rico,[13] mediante la cual se ordenó la eliminación del expediente penal del recurrido Luis Rivera Pagán (sus dos (2) convicciones por los delitos de tentativa de asesinato), cuando denegó la solicitud de éste para tener y poseer un arma de fuego por razón de la prohibición contenida en el Art. 17 de la Ley de Armas de Puerto Rico, *supra.*

Por los fundamentos expresados, *se dictará sentencia que revoque la resolución dictada por el Tribunal Superior, Sala de Utuado, y que sostenga la denegación del señor Superintendente de la Policía de conceder al recurrido Luis Rivera Pagán una licencia para tener y poseer un arma de fuego.*

El Juez Asociado Señor Negrón García concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López emitió una opinión disidente.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Una lectura objetiva de la Opinión mayoritaria emitida en el presente caso demuestra que la conclusión a la que llega la Mayoría está predicada en dos (2) fundamentos, a saber: que el Art. 17 de la Ley de Armas de Puerto Rico, 25

---

[13] Dictada el 14 de febrero de 1986 en el Caso Núm. 86-228.

L.P.R.A. sec. 427, establece que el Superintendente de la Policía de Puerto Rico *no* puede concederle una licencia para tener y poseer un arma de fuego a una persona que haya sido convicta de la comisión, o tentativa, de los delitos que en el mismo se enumeran, y, en segundo término, que el delito de tentativa de asesinato es un delito que implica depravación moral, razón por la cual, *un tribunal no tiene facultad* —al amparo de lo dispuesto por la Ley Núm. 108 de 21 de junio de 1968, conocida como Ley sobre Eliminación de Convicciones de Delitos Menos Graves del Récord Penal[1]— *para eliminar del récord penal de una persona una convicción por el delito de tentativa de asesinato.*

Independientemente de la corrección o no de dichos fundamentos, *nos vemos impedidos* de suscribir la Opinión mayoritaria emitida. *Veamos por qué.*

I

La Ley de Armas de Puerto Rico, no hay duda, le concede una gran discreción al Superintendente de la Policía de Puerto Rico en lo relativo a la concesión y expedición de licencias para tener y poseer armas de fuego. Evidencia fehaciente de ello la constituyen las disposiciones del Art. 17 de la referida Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 427, y del Art. 18 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 428; las cuales, *en lo pertinente*, establecen que:

*Sec. 427. Fundamentos para rehusar expedición de licencia*

El Superintendente de la Policía de Puerto Rico *no expedirá licencia para tener y poseer un arma de fuego a persona alguna que haya sido convicta, en o fuera de Puerto Rico, de cualquiera de los siguientes delitos o de tentativa para cometer los mismos*: asesinato en cualquier grado, homicidio, secuestro, violación, mutilación, tentativa de cualquier delito grave, agresión agra-

---

[1] 34 L.P.R.A. sec. 1731 *et seq.*

vada, cuando este delito se haya realizado con un arma cortante, punzante o de fuego, robo, escalamiento, apropiación ilegal, apropiación ilegal agravada, incendio, incendio agravado, incesto, o infracción a la Ley Núm. 53 de 10 de junio de 1948, según ha sido enmendada o infracción a las secs. 1247 a 1257 del Título 33, o infracción a la sec. 4521 del Título 33, *ni a ninguna persona que sea un desequilibrado mental, un ebrio habitual o que sea adicto a uso de narcóticos o drogas, ni a ninguna persona que haya sido convicta por violación a las disposiciones de este Capítulo.* (Énfasis suplido.)

*Sec. 428. Cualidades del solicitante; conducta, huellas digitales*

El Superintendente de la Policía de Puerto Rico *no* expedirá licencia para tener y poseer un arma de fuego *a menos que dicho funcionario esté convencido de que el solicitante es una persona que ha cumplido veintiún (21) años, de conducta intachable, de buena reputación, que sus huellas digitales sean tomadas y constatadas con los archivos de la Policía, que conoce el manejo del arma por haber tomado un curso de entrenamiento debidamente aprobado por el Superintendente y a menos que a juicio de dicho funcionario no exista ningún motivo para denegar tal solicitud.* El requisito de edad mínima aquí provisto no se entenderá que aplica, limita o afecta la portación y uso de armas de fuego por agentes del orden público. El Comité Interagencial creado por la sec. 453a de este título aprobará reglamentación para autorizar a instructores, clubes u organizaciones que posean licencias para dedicarse al deporte del tiro al blanco y que interesen ofrecer cursos de entrenamientos en el uso y manejo de armas de fuego, a fin de que estos clubes, organizaciones o instructores puedan poner a la disposición de los asistentes a tales cursos armas de fuego similares a las que éstos interesen adquirir o las que posean legalmente. (Énfasis suplido.)

*Ahora bien*, una vez el Superintendente ejercita esa discreción, denegando una solicitud de licencia, *no* puede pasarse por alto las disposiciones del inciso (d) del Art. 19 de la referida Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 429(d), el cual establece que:

(d) Cuando el Superintendente de la Policía de Puerto Rico *denegare* a una persona una licencia para tener y poseer un arma de fuego bajo las disposiciones de este Capítulo, o cuando

dicho funcionario *cancelare* una licencia bajo las disposiciones del inciso (c) de esta sección, *la persona afectada podrá comparecer ante la sala del Tribunal Superior del lugar en que radicare su residencia y formular de nuevo su solicitud.* El tribunal notificará al Superintendente de la Policía de Puerto Rico, quien podrá comparecer a sostener su negativa, y resolverá con la intervención del fiscal. El Tribunal Superior *estará autorizado* para requerir las pruebas y ordenar las investigaciones que considerase necesarias y convenientes, y su decisión será final y firme. (Énfasis suplido.)

De una simple lectura de la antes transcrita disposición legal resulta meridianamente claro que el legislador al promulgar la misma estableció, en lugar de un procedimiento de revisión administrativa, un juicio *de novo* en el cual las partes tienen derecho a presentar *toda* la evidencia que estimen pertinente, *inclusive prueba que no fue incluida a nivel administrativo,* en apoyo de sus respectivas posiciones; evidencia a base de la cual el tribunal de instancia llegará a su *propia* determinación. *Muñoz, Torres v. Superintendente Policía,* 125 D.P.R. 603 (1990).

Ello resulta ser *singularmente importante* por cuanto al no tratarse propiamente de un procedimiento de revisión administrativa, *no* entra en juego la norma jurisprudencial a los efectos de que los tribunales de instancia, al revisar decisiones administrativas, deben de actuar con gran respeto y deferencia respecto a la interpretación que de un estatuto realice el organismo administrativo encargado de velar por su cumplimiento; ello, naturalmente, por razón del conocimiento especializado (*expertise*) que sobre la materia en controversia poseen dichos organismos administrativos. *A.R.P.E. v. Ozores Pérez,* 116 D.P.R. 816, 821 (1986); *M & V Orthodontics v. Negdo. Seg. Empleo,* 115 D.P.R. 183 (1984).

Esto es, no tratándose de un procedimiento de revisión administrativo, los procedimientos que se llevan a cabo en esta clase de situaciones ante la Policía de Puerto Rico, y la decisión que al respecto emite el Superintendente de dicho

cuerpo policíaco, *no* tienen a su favor la presunción de regularidad y corrección que, de ordinario, cobija a dichas decisiones administrativas; presunción que obliga a la parte que las impugna a producir suficiente evidencia para derrotarla. *Cf. M. & B.S., Inc. v. Depto. de Agricultura*, 118 D.P.R. 319, 331 (1987); *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975). *Es por ello que al revisar las sentencias que se emiten por los tribunales de instancia en esta clase de casos estamos ante la situación normal y corriente de la revisión, por parte de este Tribunal, de un decreto judicial emitido por un tribunal en un caso civil ordinario, decreto que dicho foro emite a base del criterio de la preponderancia de la prueba.*

A esos efectos conviene recordar que, aun cuando el arbitrio del juzgador de hechos no tiene credenciales de inmunidad frente a la función revisora de este Tribunal, *Vda. de Morales v. De Jesús Toro*, 107 D.P.R. 826 (1978), "no somos dados a intervenir con frecuencia con las determinaciones de hecho que hace un tribunal de instancia y a sustituir nuestro criterio por el del juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar ...". *Vélez v. Srio. de Justicia*, 115 D.P.R. 533, 545 (1984).

En resumen, al igual que en cualquier otro caso civil ordinario, en esta clase de situaciones *no intervendremos* con las sentencias que emitan los tribunales de instancia *en ausencia de* indicios de pasión, prejuicio, parcialidad o error manifiesto de parte del foro sentenciador, *o, a menos que* nos convenzamos, luego de un análisis sereno y desapasionado, de que las determinaciones de hechos realizadas por el tribunal de instancia no representan el balance más racional, justiciero y jurídico de la totalidad de la evidencia que desfilara ante dicho foro judicial. *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 181 (1985); *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721 (1984); *Ramos Acosta v. Caparra Dairy, Inc.*, 113 D.P.R. 357 (1982); *Abudo*

*Servera v. A.T.P.R.*, 105 D.P.R. 728 (1977); *Sanabria v. Sucn. González*, 82 D.P.R. 885 (1961).

## II

Aclarada *la naturaleza del procedimiento judicial* que la citada Ley de Armas de Puerto Rico le brinda a aquel ciudadano a quien le es denegada la concesión de una licencia para tener y poseer un arma de fuego por el Superintendente de la Policía, o cuando dicho funcionario cancela una licencia de posesión existente, *pasamos a considerar los hechos específicos del caso ante nuestra consideración.*

*No* está en controversia el hecho de que el demandante recurrido Rivera Pagán *fue convicto*, hace más de veinticinco (25) años, de dos (2) delitos de ataque para cometer asesinato y de infringir los Arts. 4, 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 414, 416 y 418. Ello, *de ordinario*, lo inhabilitaría para ser acreedor a una licencia para tener y poseer un arma de fuego.

Ahora bien, *tampoco* está en controversia el hecho de que el recurrido Rivera Pagán, antes de solicitar la licencia de posesión, acudió ante la Sala de Manatí del Tribunal de Distrito de Puerto Rico —al amparo de las disposiciones de la antes citada Ley Núm. 108 de 21 de junio de 1968— en solicitud de la eliminación de dichas convicciones de su récord penal, para lo cual provee la citada Ley Núm. 108 (34 L.P.R.A. sec. 1731 *et seq.*).

Resulta necesario enfatizar el hecho de que el procedimiento que a esos efectos establece la citada Ley Núm. 108 —en relación con los delitos graves— es uno contencioso y/o, cuando menos, uno en que tiene que ser notificado no sólo el Ministerio Fiscal sino que el Superintendente de la Policía de Puerto Rico y, *aún más importante y significativo*, en que el tribunal viene en la obligación de celebrar vista, en la cual "será *obligatoria la comparecencia* de los abogados de la Policía de Puerto Rico o del fiscal de distrito

correspondiente"; comparecencia que "podrá ser personalmente o por escrito". 34 L.P.R.A. sec. 1732.

De manera pues que la resolución, o sentencia, que emitiera el Tribunal de Distrito de Puerto Rico, Sala de Manatí, ordenando la eliminación de las antes enumeradas convicciones del récord penal del recurrido Rivera Pagán fue una hecha con la aquiescencia del Superintendente de la Policía y/o dicho funcionario consintió la misma al no revisarla. De cualquier manera, dicha resolución y/o sentencia es una final y firme que, respecto al recurrido Rivera Pagán, obliga al Superintendente de la Policía y al foro judicial.

*¿Cuál es la consecuencia jurídica de tal determinación judicial?* Ello lo resolvimos en *Pueblo v. Ortiz Martínez*, 123 D.P.R. 820 (1989), y en *Muñoz, Torres v. Superintendente Policía*, ante. En el primero de dichos casos —*Pueblo v. Ortiz Martínez*, ante, págs. 831–832— expresamos, *en lo pertinente*, que:

> Aclarado el ámbito de la Ley Núm. 108, *supra, expongamos sus efectos.* El dictamen del Tribunal de Distrito ordenará al Superintendente de la Policía y al custodio de los récord criminales de dicho Cuerpo la eliminación de las convicciones del récord penal interesadas. De igual forma, deberá dirigirse al Secretario del tribunal o a los tribunales en que se originaron.
>
> A partir de ese mandato, las convicciones serán eliminadas de todo registro y de toda inscripción, constancia o referencia que exista bajo la custodia de los funcionarios antes indicados, *quedando prohibido aludirlas o certificarlas directa o indirectamente.* De ese modo, logra plena virtualidad la filosofía consagrada en la ley —congruente con un enfoque moderno de rehabilitación— *de que el peticionario nunca fue acusado ni convicto del delito.* Ciertamente, tanto el procedimiento judicial como el trámite administrativo establecidos en la ley vienen a llenar una laguna y a remediar una situación de injusticia que pesaba sobre aquellos ciudadanos que años atrás incurrieron en delitos, pero que después han mantenido una conducta ejemplar en nuestra sociedad. *Como consecuencia de ese trámite, los tribunales no pueden tomar en consideración las convicciones así borradas.* No puede darse la anomalía de que mientras de un lado el Superintendente de la Policía certifica

negativamente, por otro lado el tribunal acuda a sus archivos para resucitar esas convicciones.

Resolvemos que, en su verdadero alcance, el Art. 2 de la Ley de Sentencia Suspendida, *supra, no* priva a una persona de sus beneficios si bajo los cauces legales disponibles ha logrado eliminar su convicción de delito grave y posee un Certificado Negativo de Antecedentes Penales legítimamente expedido por el Superintendente de la Policía. Después de todo, los efectos de la Ley Núm. 254 de 27 de julio de 1974 reguladora de los Certificados de Antecedentes Penales archivados en la Policía —que únicamente puede cubrir sentencias condenatorias— van más allá del ámbito civil. *Carecería de propósito que el legislador autorizara su eliminación y su certificación negativa si todavía pudieran utilizarse por los tribunales.* (Énfasis suplido y en el original.)

En *Muñoz, Torres v. Superintendente Policía,* ante, resolvimos que una persona que había sido convicta de un delito grave, pero que había "borrado" dicha convicción al amparo de lo dispuesto por la citada Ley Núm. 108, *podía* posteriormente solicitar, y ser el beneficiario, de una licencia para tener y poseer un arma de fuego y/o una licencia de tiro al blanco. Al así resolver, expresamos, en lo pertinente, que:

Resolvemos, a tenor con la política pública establecida mediante la Ley 108, *supra,* y reconocida por este Tribunal en *Pueblo v. Ortiz Martínez,* supra, que los Arts. 5 de la Ley de Tiro al Blanco, *supra,* y 17 de la Ley de Armas de Puerto Rico, *supra, no privan a una persona de sus beneficios si legítimamente ha logrado eliminar de su récord la convicción por los delitos allí establecidos.* Dicho de otra manera, el Superintendente de la Policía tiene discreción en estos casos para expedir la licencia solicitada. En aquellos casos en que se deniegue la solicitud, *los ciudadanos afectados podrán comparecer ante la Sala del Tribunal Superior correspondiente y formular de nuevo su solicitud.* Art. 19(d) de la Ley de Armas de Puerto Rico, según enmendado, 25 L.P.R.A. 429, en cuyo proceso *se tomará la decisión a base de la prueba presentada. Ayala Alicea v. E.L.A.,* 118 D.P.R. 507 (1987); *Ex Parte Negrón Wells,* 105 D.P.R. 406 (1976). (Énfasis suplido.) *Muñoz, Torres v. Superintendente Policía,* ante, págs. 609–610.

En resumen, este Tribunal *ha resuelto* que una convic-

ción por delito grave, que ha sido *eliminada del récord* mediante el procedimiento que establece la citada Ley Núm. 108, *no constituye impedimento, ni puede ser utilizada como fundamento, para la denegación de una sentencia suspendida por el foro judicial ni para la concesión o denegación de una licencia para tener y poseer un arma de fuego por el Superintendente de la Policía.*

## III

*No cuestionamos* la corrección de la posición a los efectos de que, bajo las disposiciones del citado Art. 17 de la Ley de Armas de Puerto Rico, una persona que haya sido convicta de un delito de tentativa de asesinato *no* tiene derecho a que el Superintendente de la Policía de Puerto Rico le expida una licencia para tener y poseer un arma de fuego. Esa, llana y sencillamente, es la ley.

*Tampoco cuestionamos* la corrección de la conclusión a la que llega la Mayoría a los efectos de que el delito de tentativa de asesinato es uno que implica depravación moral y de que, en consecuencia, la actuación de la Sala de Manatí del Tribunal de Distrito de Puerto Rico, al eliminarle las dos (2) convicciones por dicho delito al recurrido Rivera Pagán, fue una improcedente en derecho. Ello no obstante, dicha errónea decisión *no* fue revisada por el Superintendente de la Policía y/o por el Estado; razón por la cual dicha determinación judicial es una final y firme que obliga al referido Superintendente y al Estado. De hecho, *dichas convicciones fueron efectivamente eliminadas del récord penal del recurrido Rivera Pagán*; la consecuencia de cuya acción —conforme se resolvió en los casos de *Pueblo v. Ortiz Martínez*, ante, y *Muñoz, Torres v. Superintendente Policía*, ante— es la de que la persona "nunca fue acusada ni convicta del delito" que se elimina y "quedando prohibido" el que tan siquiera se aluda a la referida convicción, mucho menos de que se utilice dicha convicción para dene-

garle una sentencia suspendida o una licencia para tener y poseer un arma de fuego.

Siendo ello así, ¿puede este Tribunal, *en el presente caso*, utilizar el fundamento de que el recurrido Rivera Pagán fue convicto, hace más de veinticinco (25) años, de un delito grave que conlleva depravación moral cuando el foro judicial eliminó de su récord penal la referida convicción bajo el procedimiento establecido en la referida Ley Núm. 108?

La contestación en la negativa —y, por ende, lo erróneo de la decisión mayoritaria hoy emitida en el presente caso— "resalta a la vista y hiere la retina". *In re Roldán González*, 113 D.P.R. 238, 242 (1982). La *contradicción*, o la *inconsistencia*, en que incurre el Tribunal —al compararse la decisión hoy emitida con las emitidas en los casos de *Pueblo v. Ortiz Martínez*, ante, y *Muñoz, Torres v. Superintendente Policía*, ante— resulta ser *verdaderamente incomprensible*.

Por último, estando impedido este Tribunal —y cualquier otro foro— de aludir y/o utilizar las referidas convicciones como fundamento en la revisión de la decisión emitida por el tribunal de instancia en el presente caso, *no* existe fundamento alguno que nos permita intervenir y/o revocar la referida decisión. Es por ello que disentimos.