## ESTADO LIBRE ASOCIADO DE PUERTO RICO
## TRIBUNAL DE APELACIONES
## PANEL XII

| | | |
|---|---|---|
| MELVIN CRUZ CARDERA<br><br>Apelante<br><br>v.<br><br>NEGOCIADO DE LA POLICÍA DE PUERTO RICO Y OTROS<br><br>Apelados | TA2025AP00567 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Ciales<br><br>Caso Núm.: CI2024CV00424<br><br>Sobre: Revisión Portación sobre Ley de Armas |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto y el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 21 de enero de 2026.

El Sr. Melvin Cruz Cardera (señor Cruz Cardera o apelante) solicita nuestra intervención para revocar la *Sentencia* emitida el 29 de septiembre de 2025, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Ciales (TPI). En el referido dictamen, el TPI concedió la petición desestimatoria del Negociado de la Policía de Puerto Rico (NPPR o apelado). En consecuencia, refrendó la denegación de la solicitud de licencia de armas y desestimó el recurso de revisión, incoado al amparo del Artículo 2.02 (d) (4) de la Ley de Armas de Puerto Rico.[1]

### I.

La presente causa se inició el 7 de diciembre de 2024, ocasión en que el señor Cruz Cardera instó una *Demanda* contra el NPPR.[2] Impugnó la carta suscrita por el apelado, fechada el 29 de agosto de 2024, mediante la cual comunicó su denegación a la solicitud de licencia de armas 602667.[3] Ello así, porque el apelante no satisfizo los requisitos establecidos en los Artículos 2.02 (d) (3) y 2.09 de la Ley de Armas, *infra.* Específicamente, se consignó la causa por "convicciones por delitos menos graves que conllevan

---

[1] 25 LPRA sec. 462a (d) (4).
[2] Entrada 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[3] *Id.*, Anejo.

violencia y por violaciones a las disposiciones de esta Ley o de las anteriores Leyes de Armas, registradas en los archivos digitales". Insatisfecho con tal determinación, el apelante solicitó reconsideración, pero su petición fue denegada de plano por el apelado.

En su recurso ante el TPI, el señor Cruz Cardera planteó que cumplía con los requisitos estatuidos para la tenencia de una licencia de armas. En particular, adujo que eliminó de su expediente los antecedentes penales.[4]

En respuesta, el 29 de abril de 2025, el NPPR instó una *Moción de desestimación*.[5] Insistió en que el apelante no cumplía los requisitos exigidos en el estatuto especial.[6] Expresó:

> [S]i bien se puede tramitar la eliminación de las convicciones en el Certificado de Antecedentes Penales que expide el NPPR para uso de la ciudadanía, lo cierto es que las convicciones pueden surgir de la investigación en los archivos digitales de cualquier agencia gubernamental de Puerto Rico, Estados Unidos o el extranjero, a los que pueda tener acceso el NPPR. Es decir, el mencionado procedimiento no suprime el récord criminal de los archivos digitales. Precisamente, el historial de violencia de un peticionario es un elemento a considerar para expedir, renovar y revocar una licencia de armas.

Así, pues, razonó que el señor Cruz Cardera adolecía de una causa de acción que justificara la concesión de un remedio. Ante la invocación de deferencia de las decisiones administrativas, el NPPR solicitó la desestimación del pleito.

El 12 de junio de 2025, el señor Cruz Cardera incoó su oposición. En ésta, esgrimió varias controversias de derecho.[7] En alusión a legislación estatal y federal, por ejemplo, acotó que el NPPR transgredía el ordenamiento jurídico al tomar en consideración antecedentes penales

---

[4] Por virtud de la *Resolución y Orden* de 13 de abril de 2023, caso CI2023CV00077, el TPI ordenó la eliminación del certificado de antecedentes penales la convicción por delito grave del Artículo 5.05 de la hoy derogada Ley de Armas de 2000, 25 LPRA ant. sec. 458d, *Portación y usos de armas blancas*, en el caso *Pueblo de Puerto Rico v. Melvin Cruz Cardera* CLA2016G-191. Véase, el Anejo 1 de la entrada 12 SUMAC.

[5] Entrada 8 SUMAC.

[6] Además del caso CLA2016G-191, el NPPR solicitó al TPI que tomara conocimiento judicial del caso *Pueblo de Puerto Rico v. Melvin Cruz Cardera*, C1MG2016M0006, en el que el apelante hizo alegación de culpabilidad por el delito de *Amenaza*, según tipificado en el Artículo 177 del Código Penal de 2012, 33 LPRA sec. 5243.

[7] Entrada 12 SUMAC.

eliminados, en perjuicio de un ciudadano y su derecho constitucional a la posesión de armas para la autodefensa. Asimismo, refutó la norma de referencia administrativa, al invalidarse jurisprudencialmente la doctrina Chevron.

Ponderados los escritos judiciales, el 30 de septiembre de 2025, el TPI notificó la *Sentencia* impugnada.[8] En ésta declaró con lugar la postura del NPPR y, por ende, desestimó la causa de acción del señor Cruz Cardera. Por igual, luego de evaluar la *Moción solicitando reconsideración a Sentencia de desestimación*,[9] el TPI no quedó persuadido y rechazó variar su dictamen, lo que notificó el 20 de octubre de 2025.[10]

Todavía inconforme, el señor Cruz Cardera acudió oportunamente ante esta curia y esbozó los siguientes errores:

a. Erró el Tribunal de Primera Instancia al determinar que en *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. ___ (2022), se estableció que cualquier regulación sobre este derecho debe ser consistente con la tradición histórica de la nación. Sin embargo, el propio Juez Scalia en *Heller* reconoció que este derecho no es ilimitado y que existen prohibiciones "presuntivamente legales" y de larga data, como aquellas que impiden la posesión de armas por parte de convictos y enfermos mentales.

b. Erró el Tribunal de Primera Instancia actuó contrario a la ley al confirmar la determinación del NPPR que denegó la solicitud de la licencia de armas del apelado de conformidad con los Artículos 2.02(d) y 2.09 de [la] Ley Núm. 168-2019, que impide la concesión de una licencia de armas a alguna persona que ha sido convicta por violación a disposiciones de leyes de armas anteriores, el cual resultó de la investigación en los archivos digitales.

c. Erró el Tribunal de Primera Instancia al determin[a]r que "El apelante alega que bajo *NYSPRA v. Bruen*, la regulación del NPPR es inconstitucional". Sin embargo, la prohibición de que personas con un historial de violencia posean armas de fuego es consistente con la tradición histórica de la nación y cae dentro de las prohibiciones "presuntivamente legales" reconocidas en Heller. La regulación no es una prohibición general, sino una descalificación individualizada basada en conducta criminal previa.

d. Erró el Tribunal de Primera Instancia al establecer que "Cuando dos estatutos parecen entrar en conflicto, el deber del Tribunal es interpretarlos de manera que, de ser posible, ambos conserven su efectividad". Sin embargo, un principio

---

[8] Entrada 14 SUMAC.
[9] Entrada 15 SUMAC.
[10] Entrada 16 SUMAC.

fundamental de hermenéutica legal es que la ley especial prevalece sobre la ley general (*lex specialis derogat legi generali*).

e. Erró el Tribunal de Primera Instancia al determinar que "El apelante señala que bajo la *Firearms Owner's Protection Act* (FOPA, 18 U.S.C. 921(a)(33)), una persona no se considera convicta si la condena ha sido eliminada, a menos que la ley de eliminación expresamente prohíba la posesión de armas. FOPA establece un estándar federal para prohibiciones federales. No impide que un estado o territorio, al emitir sus propias licencias, establezca criterios más estrictos que no entran en conflicto directo con el mandato federal. La Ley 168-2019 hace precisamente eso para el licenciamiento en Puerto Rico".

Por su parte, en cumplimiento de nuestra *Resolución*, el NPPR presentó su *Alegato* el 18 de diciembre de 2025. Con el beneficio de ambas comparecencias, resolvemos.

## II.

### A.

La desestimación es un pronunciamiento judicial que resuelve el pleito de forma desfavorable para el demandante sin celebrar un juicio en su fondo o en los méritos. S.*L.G. Sierra v. Rodríguez*, 163 DPR 738, 745 (2005). De este modo, la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, permite que el demandado solicite la desestimación de la demanda, antes de presentar una contestación. Las razones para solicitar la desestimación son las siguientes: (1) falta de jurisdicción sobre la materia, (2) falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento, (4) insuficiencia del diligenciamiento del emplazamiento, (5) **dejar de exponer una reclamación que justifique la concesión de un remedio** y (6) dejar de acumular una parte indispensable. *Costas Elena y otros v. Magic Sport y otros*, 213 DPR 523, 533 (2024); *González Méndez v. Acción Soc.*, 196 DPR 213, 234 (2016).

El Tribunal Supremo de Puerto Rico ratificó en *Costas Elena y otros v. Magic Sport y otros*, *supra*, págs. 533-534, las normas que rigen la desestimación de una demanda basada en el inciso 5 de la Regla 10.2 de Procedimiento Civil, *supra*. Estas guías se resumen como sigue:

(1) La desestimación procede cuando, de las alegaciones de la demanda, surge que alguna de las defensas afirmativas derrotará la pretensión del demandante.

(2) Al evaluar una moción de desestimación al amparo de la Regla 10.2 (5), *supra,* el tribunal tiene que tomar como ciertos todos los hechos bien alegados en la demanda, aseverados de manera clara y concluyente y que de su faz no dan margen a dudas.

(3) Los tribunales que atienden una moción basada en la Regla 10.2, *supra,* tienen que evaluar las alegaciones de la demanda conjuntamente, y de la forma más favorable para el demandante.

(4) Toda duda debe resolverse a favor del demandante.

(5) El demandado tiene que establecer con toda certeza que el demandante no tiene derecho a remedio alguno, bajo cualquiera estado de Derecho que se pudiera probar en apoyo a su reclamación. Véase, además, *Eagle Security v. Efron Dorado et al,* 211 DPR 70, 84 (2023).

En otras palabras, a los fines de disponer de una moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, *supra,* es norma asentada que el tribunal está obligado a dar por ciertas y buenas todas las alegaciones fácticas de la demanda radicada y que hayan sido aseveradas de manera clara. *Costas Elena y otros v. Magic Sport y otros, supra,* pág. 533; *Torres Torres v. Torres et al.,* 179 DPR 481, 501 (2010); *Perfect Cleaning v. Cardiovascular,* 172 DPR 139, 149 (2007); *Colón v. Lotería,* 167 DPR 625, 649 (2006). Luego de ello, determinará si, a base de esos hechos que tomó como ciertos, la demanda establece una reclamación plausible que justifique la reclamación de un remedio. *Costas Elena y otros v. Magic Sport y otros, supra,* pág. 534. De modo que, si al así hacerlo se establece con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda ser probado en apoyo a su reclamación, procederá la desestimación solicitada. *Id.; Rivera Sanfeliz et al. v. Jta. Dir. First Bank,* 193 DPR 38, 49 (2015); *Ortiz Matías et al. v. Mora Devevelopment,* 187 DPR 649, 654 (2013). Esta medida extrema procede solamente en casos claros, pues conlleva la privación a un litigante de su

día en corte. *Costas Elena y otros v. Magic Sport y otros, supra,* pág. 534; *Rosario v. Nationwide Mutual,* 158 DPR 775, 780 (2003).

**B.**

La Segunda Enmienda de la Constitución de los Estados Unidos establece que "[s]iendo necesaria para la seguridad de un Estado libre una Milicia bien organizada, no se deberá coartar el derecho del pueblo a poseer y portar armas". Emda. II, Const. EE. UU., LPRA, Tomo 1. Como se sabe, mediante la Decimocuarta Enmienda de la Carta de Derechos de la Constitución federal,[11] se ha extendido a los estados los derechos fundamentales allí consagrados, a través de la doctrina de incorporación selectiva, por lo que la Segunda Enmienda aplica a Puerto Rico. *Pueblo v. Rodríguez López et al.,* 210 DPR 752, 766 (2022); *McDonald v. Chicago,* 561 US 742, 750, 763, 765 y 791 (2010). Huelga mencionar, sin embargo, que éste, al igual que otros derechos, no es absoluto, ya que el estado puede regularlo. *District of Columbia v. Heller,* 554 US 570, 626-627 (2008). En específico, **el derecho a poseer y portar armas de fuego puede limitarse si el estado cumple con el estándar de "text-and-history test".** *New York State Rifle & Pistol Assn., Inc. v. Bruen,* 142 S. Ct. 2111, 2125-2131 (2022). Es decir, demostrar que la regulación es coherente con la tradición histórica de regulación de armas de fuego. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command". *Id.,* pág. 2126.

> [C]orresponde evaluar si las regulaciones modernas e históricas imponen una carga comparable sobre el derecho fundamental a poseer y portar armas para defensa propia, y si dicha carga está igualmente justificada. Se trata, pues, de realizar un análisis histórico y de razonamiento analógico mediante el cual identifiquemos una analogía bien establecida e históricamente representativa. Esto no implica que debamos identificar disposiciones legales idénticas, sino que sean suficientemente análogas como para superar el examen constitucional. (Citas omitidas) *J.H.V. v. Negociado de la Policía de Puerto Rico,* 2025 TSPR 139, 216 DPR __ (2025) que cita con

---

[11] Emda. XIV, Const. EE. UU., LPRA, Tomo 1.

aprobación a *Pueblo v. Rodríguez, López et al., supra,* págs. 776-777 y refiere a *US v. Rahimi,* 602 US 680 (2024).

## III.

En este caso, en esencia, el señor Cruz Cardera alega que el ente gubernamental y el foro revisor primario erraron al sostener la denegación de la licencia de armas solicitada. Plantea que la controversia sobre si tiene o no antecedentes penales es una de estricto derecho; así como las cuestiones relativas a la interpretación de estatutos. A su favor, arguye que cumple con los requisitos estatutarios para ostentar la licencia de armas. En particular, establece que sometió un Certificado de Antecedentes Penales negativo, expedido por el propio apelado, luego de observar el procedimiento dispuesto en la Ley Núm. 254 de 27 de julio de 1974, *Ley para Autorizar a la Policía de Puerto Rico la Expedición de Certificados de Antecedentes Penales,* 34 LPRA sec. 1725 *et seq.*, la cual provee para la eliminación de convicciones de delitos menos graves y graves. Comenta que es contradictorio que el apelado certifique que no tiene antecedentes penales, pero luego aluda a que sí los tiene para denegar la licencia de armas.

Asimismo, el apelante apunta que la Ley 143 de 26 de agosto de 2014, conocida como *Ley del Protocolo para Garantizar la Comunicación Efectiva entre los Componentes de Seguridad del Estado Libre Asociado de Puerto Rico y del Sistema de Información de Justicia Criminal,* 4 LPRA sec. 533 *et seq.* (Ley Núm. 143-2014), mandata a tomar

> todas las medidas necesarias para asegurarse de que todo dato relativo a convicciones cuya eliminación del record [*sic*] penal de una persona haya sido ordenado por un Tribunal competente sea efectiva y totalmente eliminada del Sistema de Información de Justicia Criminal, incluyendo, pero sin que esto se entienda como una limitación, las memorias de cualesquiera computadoras utilizadas por el Sistema. 4 LPRA sec. 533e.

A esos fines, indica que su convicción de delito grave fue suprimida de su expediente y, por mandato de ley, se supone que el Estado no la tenga

en sus registros. Indica que este proceder contraviene el principio rector de rehabilitación y el de la finalidad del sistema de Justicia.

De entrada, en cuanto al último error señalado, cabe recalcar que la aludida Sección 921 (a) (33) del *Gun Control Act of 1968*, 18 U.S.C. 921 (a) (33), se limita a definir el término *misdemeanor crime of domestic violence* para efectos de la aplicación de las disposiciones federales que restringen la posesión de armas de fuego a personas convictas por violencia doméstica. Es decir, la disposición mencionada no incide sobre los efectos de otro tipo de delitos.[12] Por lo tanto, es inaplicable a los hechos del caso del epígrafe, ya que al apelante no se le ha imputado ese tipo de violación.

El resto de los errores señalados los discutiremos en conjunto. Veamos.

La *Ley de Armas de Puerto Rico de 2020*, 25 LPRA sec. 4621, *et seq.*, promulgada el 11 de diciembre de 2019, al igual que el derogado estatuto predecesor, Ley de Armas de 2000,[13] impone ciertos requisitos para obtener una licencia.[14] En lo que atañe al caso del epígrafe, el Artículo 2.02 de la Ley de Armas de 2020 dispone, en lo pertinente, como sigue:

> Artículo 2.02. — *Licencia de Armas.*
>
> (a) La Oficina de Licencias de Armas, expedirá licencias de armas a todo peticionario que cumpla con los siguientes requisitos:
>
> .    .    .    .    .    .    .    .
>
> (2) Tener un **expediente negativo de antecedentes penales** y no encontrarse acusado y pendiente o en proceso de juicio por algunos de los delitos enumerados en el Artículo 2.09 de

---

[12] El estatuto dispone:
(A) Except as provided in subparagraphs (B) and (C), the term "misdemeanor crime of domestic violence" means an offense that—
(i) is a misdemeanor under Federal, State, Tribal, or local law; and
(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, by a person similarly situated to a spouse, parent, or guardian of the victim, or by a person who has a current or recent former dating relationship with the victim.

[13] Ley Núm. 404 de 11 de septiembre de 2000, *Ley de Armas de Puerto Rico*, 25 LPRA ant. 455 *et seq.*

[14] Refiérase, además, al Capítulo 2, *Licencia de Armas*, del *Reglamento para Administrar la Ley de Armas de Puerto Rico de 2020*, Reglamento Núm. 9172 de 17 de marzo de 2020.

esta Ley o sus equivalentes, tanto en Puerto Rico, como en cualquier jurisdicción de Estados Unidos, a nivel federal o en cualquier país extranjero.

. . . . . . .

(d) Radicación de Solicitudes de Licencia de Armas:

(1) [...] Recibido el pago por los derechos y los documentos, debidamente cumplimentados, se procederá de inmediato a realizar el **cotejo electrónico**, sobre el expediente negativo de antecedentes penales del peticionario.

. . . . . . .

(3) A partir de que se acepte la solicitud para la expedición de una licencia de armas, la Oficina de Licencias de Armas, determinará y certificará por escrito si el peticionario cumple o no, con los requisitos establecidos en este capítulo para la expedición de la licencia de armas. Esto deberá lograrse mediante una **investigación en los archivos digitales** de cualquier agencia gubernamental de Puerto Rico, de Estados Unidos o cualquier subdivisión política de este, de cualquier entidad extranjera o internacional a la que pueda tener acceso, incluyendo los archivos del *National Crime Information Center* (NCIC), del *National Instant Criminal Background Check System* (NICS), el Sistema de Información de Justicia Criminal (SIJC-PR) y el Registro Criminal Integrado (RCI).

(4) **De resultar la investigación realizada por la Oficina de Licencias de Armas de los archivos digitales en una determinación de que la persona no cumple con todos los requisitos establecidos en este capítulo, no le será concedida la licencia de armas**, pero sin menoscabo a que el peticionario pueda solicitarla nuevamente en un futuro. [...] (Énfasis nuestro). 25 LPRA sec. 462 (a) (2) (d) (1, 3-4).

Por otro lado, el Artículo 2.09 de la Ley de Armas de 2020, *supra,* estatuye en parte como sigue:

Artículo 2.09. —*Fundamentos para Rehusar Expedir Licencias.* La Oficina de Licencias de Armas **no expedirá licencia de armas,** o de haberse expedido se revocará, la licencia de armas de cualquier persona que haya sido convicta, en Puerto Rico, en cualquier otra jurisdicción estadounidense de cualquier delito grave o su tentativa, por **delito menos grave que conlleve violencia,** [...] Tampoco se expedirá licencia alguna a una persona declarada incapaz mental, ebrio habitual o adicto al uso de sustancias controladas por un tribunal con jurisdicción ni a persona alguna que haya sido separada bajo condiciones deshonrosas de las Fuerzas Armadas de Estados Unidos, ni a ninguna **persona que haya sido convicta por alguna violación a las disposiciones de esta Ley o de las anteriores Leyes de Armas**; o se revocará la licencia expedida si la persona adviniera cualquiera de estas circunstancias. (Énfasis nuestro). 25 LPRA sec. 462h.

Al evaluar las cuestiones planteadas a la luz del derecho anterior, si bien la tenencia de armas es un derecho fundamental, como mostramos, hay ciertos requisitos estatales para obtener la licencia que se exigen en esta jurisdicción y que superan el crisol constitucional. En lo que nos compete, el solicitante debe ostentar un Certificado de Antecedentes Penales negativo y, además, no haber sido acusado o estar en proceso de juicio por algunos de los delitos enumerados en el Artículo 2.09, *supra.*

Según se ha esbozado, la Ley de Armas de 2020 también encomienda al NPPR a realizar una investigación en diversos archivos digitales —tanto estatales, como nacionales e internacionales— a los que tenga acceso el ente administrativo. De surgir en éstos algún hallazgo porque las convicciones aparezcan en dichos sistemas de búsqueda, el NPPR no tiene discreción para autorizar la posesión de una licencia de armas de fuego. *J.H.V. v. Negociado de la Policía de Puerto Rico, supra.* Al respecto, recientemente, nuestro alto foro enunció:

> [E]l hecho de que una persona presente un Certificado de Antecedentes Penales negativo no abre la puerta automáticamente a que el Negociado de la Policía le conceda una licencia de armas. Esto pues, se trata de tan solo uno de varios criterios que se deben cumplir para que se pueda otorgar dicho permiso. El ente administrativo no tiene discreción para autorizar la posesión de un arma de fuego si, en casos como los presentes, los registros digitales que revisa reflejan que la persona solicitante tiene un expediente con convicciones penales. *J.H.V. v. Negociado de la Policía de Puerto Rico, supra.*

En atención al estándar "text-and-history test", decididamente estas medidas cautelares satisfacen el criterio rector, ya que brindan al NPPR facultad para salvaguardar la seguridad de las personas y la propiedad, al tomar las medidas preventivas necesarias. Del mismo modo, toda vez que el derecho consagrado en la Segunda Enmienda no es absoluto, ni ilimitado, ciertamente dichas condiciones, históricamente análogas con regulaciones anteriores, comprenden un entendido tradicional que justifica la imposición de requisitos sobre el derecho fundamental a poseer y portar

armas para la defensa propia. Véase, Art. 2.02 de la derogada Ley de Armas de 2000, *Licencia de Armas*, 25 LPRA ant. sec. 456a.

En suma, aun reconociendo que el señor Cruz Caldera cumplió con el procedimiento judicial para eliminar, al menos, la convicción por un delito grave, tipificado en el derogado Artículo 5.05 de la Ley de Armas de 2000, e incluso el NPPR haber expedido un Certificado de Antecedentes Penales negativo, no implica que automáticamente sea merecedor de la licencia de armas. Esto, porque la Ley de Armas de 2020 mandata al NPPR a investigar determinadas bases de datos previo a la expedición de la licencia. El estatuto, además, dispone que el NPPR debe denegar una licencia de armas si de los registros investigados se desprende, entre otras instancias, que existen condenas por delito menos grave que conlleve violencia o infracciones a la Ley de Armas de 2020 o sus predecesoras. En el caso del título en específico, los registros continúan reflejando que el apelante tiene dos convicciones penales, proscritas textualmente en el Artículo 2.09 de la Ley de Armas de 2020, a saber: un delito de amenaza, así como una infracción por portación y uso de armas blancas. Por tanto, aun cuando el apelante posee un Certificado de Antecedentes Penales negativo, al momento de la evaluación de la solicitud de licencia de armas 602667, estas convicciones permanecían en las bases de datos investigadas y el NPPR estaba compelido por ley a considerarlas y denegar la licencia. Claro está, de existir incorrectamente alguna información en el Sistema de Información de Justicia Criminal, el Artículo 12 de la Ley Núm. 143-2014, 4 LPRA sec. 533i, dispone de un procedimiento administrativo para su rectificación. Al presente, no obstante, de conformidad con la evidencia sustancial que obra en el expediente y ante una aplicación e interpretación correcta de las leyes y reglamentos que se le ha encomendado administrar al NPPR, procede confirmar la desestimación de la *Demanda* al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, puesto que el señor Cruz Cardera adolece de una reclamación que justifique la concesión de un remedio.

## IV.

Por los fundamentos expresados, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Adames Soto emite voto particular de conformidad.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| MELVIN CRUZ CARDERA<br>Apelante<br><br>v.<br><br>NEGOCIADO DE LA POLICÍA DE PUERTO RICO Y OTROS<br>Apelados | TA2025AP00567 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Ciales<br><br>Caso Núm. CI2024CV00424<br><br>Sobre: Revisión Portación sobre Ley de Armas |
|---|---|---|

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

## VOTO PARTICULAR DE CONFORMIDAD DEL JUEZ NERY E. ADAMES SOTO

El resultado alcanzado en este caso se nos impone por efecto directo de lo que, juzgo, ha significado un retroceso en la interpretación de nuestro Tribunal Supremo sobre las consecuencias de la eliminación del récord penal, según previstas por la Ley Núm. 254-197, *Ley para autorizar a la Policía de Puerto Rico la expedición de certificados de antecedentes penales*. Me explico.

En *Muñoz, Torres v. Superintendente Policía*, 125 DPR 603 (1990), el alto foro respondió la interrogante sobre cómo se relacionaba el estatuto que posibilitaba la eliminación del récord criminal, (Ley Núm. 108-1968, vigente a ese momento), con las leyes que regulaban las solicitudes de licencia para tener y poseer un arma de fuego; Artículo 5 de la Ley de Tiro al Blanco, (15 LPRA sec.375), y el Artículo 17 de la Ley de Armas de Puerto Rico, Ley Núm. 69 de 27 de mayo de 1980. En ese entonces, citando el precedente establecido en *Pueblo v. Ortiz Martínez*, 123 DPR 820 (1989), el Tribunal Supremo afirmó, sin ambages, que *la eliminación de la convicción del récord penal tiene efecto sobre todo asunto jurídico pertinente*. Sobre lo mismo, añadió

que, *carecería de todo propósito que el legislador autorizara su eliminación y su certificación negativa,* (de los antecedentes penales), *si todavía pudieran utilizarse por los tribunales. Íd.* (Énfasis provisto).

En armonía, a renglón seguido en la misma Opinión nuestro Tribunal Supremo plasmó que **las vedas contenidas en las leyes de arma *no privaban a una persona de sus beneficios,* *si legítimamente ha logrado eliminar de su récord la convicción por los delitos allí establecidos.* Muñoz, Torres v. Superintendente Policía,* *supra,* pág. 609. (Énfasis y subrayado provistos). Así, podía concluirse que el efecto práctico resultante de que la persona lograra eliminar de su récord las convicciones, por virtud de lo dispuesto en la referida legislación, era la ficción jurídica de que se le tuviera como si nunca hubiese sido acusado ni convicto de delito. Pero con mayor precisión, en el contexto de una petición de licencia de armas el Estado no podía acudir al récord criminal eliminado legalmente como causa para su denegatoria.

Luego, en *Rivera Pagán v. Supte. Policía de P.R* 135 DPR 789 (1994), el Tribunal Supremo distinguió que, aunque las condenas hubiesen sido eliminadas de conformidad con la Ley Núm. 108-1968, **el propio estatuto excluía de su aplicación las condenas que implicaran depravación moral**. Es decir, por virtud de la letra clara de dicha legislación, plasmada en la entonces Ley Núm. 44-1983, no procedía eliminar del historial penal delitos que implicaran *depravación moral,* y por esta razón es que en dicha Opinión la persona que solicitó una licencia de arma se le denegó, al haber cometido uno de tales delitos.

Las enmiendas al estatuto comentado, por las leyes Núm. 254-1974, y Núm. 56-2024, reiteran el propósito legislativo manifiesto de concederle oportunidad a las personas convictas de *limpiar el récord* criminal, solo excluyendo las convicciones por *delitos sexuales violentos,*

*abuso contra menores y a quienes estuvieran incluidos en el Registro de Personas Convictas por Corrupción.* De este modo, la tendencia legislativa apunta a que, cumplidos unos requisitos precisados en el propio estatuto, se fortalecen las consecuencias beneficiosas al ciudadano que logra la eliminación del récord criminal.

Sin embargo, desde mi óptica, a partir de *JHV v. Negociado de la Policía de Puerto Rico,* 2025 TSPR 139, quedaron tronchados buena parte de los propósitos que propendían a la eliminación del récord penal, contrario al razonamiento de las Opiniones comentadas en los párrafos que preceden, en particular, en el contexto de un ciudadano que solicita una licencia de armas.[1] Esto, porque ahora resulta que, aunque el ciudadano cumpla con todos los requisitos para lograr la eliminación de las convicciones de su récord penal, y no se le hubiese encontrado culpable por algunos de los delitos que impiden tal eliminación del récord criminal, por virtud de esta interpretación judicial el Negociado de la Policía puede denegar tal derecho si encontrara que persiste la existencia de tales delitos en algún récord criminal. *Ergo,* en la *praxis* ha dejado de operar una verdadera eliminación del récord criminal.

En definitiva, juzgo que se transgrede mediante opinión judicial el propósito legislativo clarísimo que supuso la aprobación y posteriores enmiendas al estatuto que viabiliza la eliminación del récord criminal. No me resulta compatible, ni siquiera armonizable, el estado actual de las cosas *vis a vis* aquellas expresiones contundentes de *Muñoz, Torres v. Superintendente Policía, supra,* reclamando que ***la eliminación de la convicción del récord penal tiene efecto sobre todo asunto jurídico pertinente*** y, ***carecería de todo propósito que el legislador autorizara su eliminación y su certificación negativa, (de los***

---

[1] Sépase que, mediante un Voto disidente de la Juez Presidente del Tribunal Supremo, Hon. Oronoz Rodríguez, esta precisó sobre las razones para su discrepancia con gran parte de la Opinión aludida.

antecedentes penales), *si todavía pudieran utilizarse por los tribunales*.

No obstante, reconozco y respeto la función del precedente, junto a su efecto para este Tribunal de Apelaciones, del cual soy parte, de aquí que la Sentencia hoy emitida cuente con mi voto de conformidad. A fin de cuentas, resulta incontestable que, aunque la parte aquí apelante cumpliera con todos los requisitos legales para eliminar las convicciones que pesaban en su récord criminal[2], las tendrá que seguir cargando por efecto de la Opinión de nuestro Tribunal Supremo en *JHV v. Negociado de la Policía de Puerto Rico*, supra, a lo que, aunque insatisfecho, me atengo.

En San Juan, Puerto Rico, a 21 de enero de 2026.

Nery Enoc Adames Soto
Juez de Apelaciones

---

[2] Según se dijo en dicha Opinión, el apelante tendría que acudir al proceso establecido por el Art. 12 de la Ley Núm. 143-2014, con el fin de *corregir* la información sobre cambios en su récord criminal.